IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA AGELLI, M.D., M.S.    :

            :

  v.         :  Civil Action No. DKC 13-497

            :

KATHLEEN SEBELIUS,
Secretary         :
U.S. Department of Health &
Human Services      :

            :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion to dismiss, or in the alternative, for summary judgment filed by Defendant Kathleen Sebelius ("the Secretary" or "Defendant"). (ECF No. 8).[1]  Also pending are Plaintiff's motions to deny Defendant's motion (ECF No. 32) and for leave to file a surreply (ECF No. 36).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendant's motion will be granted and Plaintiff's motions will be denied.

---

[1] Kathleen Sebelius is the Secretary of the Department of Health and Human Services ("HHS").  She has been sued in her official capacity as the head of the agency that oversees the National Institutes of Health ("NIH").

## I.  Background

### A.  Factual Background

This dispute arises out of Maria Agelli's ("Dr. Agelli" or "Plaintiff") non-selection for a position at NIH.  The National Cancer Institute ("NCI"), an institute of the NIH, has employed Dr. Agelli as a Medical Officer, at the GS-14 pay grade, since 2001.  (ECF No. 1 ¶ 7).[2]  Plaintiff was born in 1952, and was fifty-nine (59) years old during the events at issue.  (*Id.* ¶ 3).  In July 2011, NIH advertised an opening on the USAJOBS system: NIH-NCI-DH-11-507121 ("Vacancy 121").[3]  The position was for a Medical Officer (Research), at the GS-15 pay grade, in the Department of Health and Human Services, NIH, NCI, Division of Cancer Control and Population Sciences ("DCCPS"), Epidemiology and Genetics Research Program ("EGRP").  (*See* ECF No. 8-2).  Through this vacancy, Dr. Muin Khoury, Acting Associate Director of EGRP, DCCPS, NCI, NHI, attempted to recruit an individual to lead the "Knowledge Management Unit" within the Office of the Associate Director of EGRP.  (ECF No. 8-3 ¶ 3; ECF No. 28-1, at

---

[2] Plaintiff, who is proceeding *pro se*, asserts that she is a "physician epidemiologist and scientist," with a  medical degree and post-graduate training in internal medicine and rheumatology from the Medical School of the University of Pisa and advanced training in public health and preventative medicine from the University of Maryland Medical School.  (ECF No. 1 ¶ 8).

[3] USAJOBS is a widely used application portal for employment with the federal government.

1).[4]  The major duties advertised for the position included: (1) providing leadership for the direction of nationwide extramural research programs in cancer epidemiology; (2) planning, developing, directing, coordinating and evaluating a program of epidemiologic research to study differences in cancer susceptibility and risk in individuals and populations and the multiple environmental and genetic factors that jointly contribute to cancer, with the ultimate goal of elucidating the etiology of cancer; (3) serving as a medical liaison between the NCI and numerous cancer research working groups and committees and between own organization and other NCI programs; and (4) facilitating the dissemination of information about the risk factors and causes of cancer to inform cancer prevention and control interventions.  (ECF No. 8-2, at 1-2).  The initial closing date for the announcement was August 11, 2011, but the application deadline was extended to August 31, 2011 due to technical difficulties on USAJOBS.  Plaintiff initially submitted some application materials on August 10, 2011, (ECF

_____

[4]  Advertisements about this position stated that "[t]he Knowledge Management Unit is a new unit designed to systematically manage the accumulating knowledge base and tools for cancer epidemiology and genomics to accelerate research, evidence-based recommendations, and translation into prevention and clinical practice."  (ECF No. 28-2, at 1).  Responsibilities of the position included working "with the four Branches of EGRP and the Scientific Consortia Coordinator on communications, knowledge synthesis, portfolio analysis, and operational priorities."  (*Id.*).

No. 28-5),[5] and later submitted a complete application on August 31, 2011. EGRP received a total of twenty-three (23) applications for this position, including Dr. Agelli's. (ECF No. 8-5). On September 15, 2011, Plaintiff, and the twenty-two other applicants for the position, received a message stating that "[t]he vacancy announcement . . . was cancelled or postponed." (ECF No. 8-6, at 2). Thus, none of the applicants to the position, including Dr. Agelli, were interviewed or selected for the position. The Knowledge Management Unit Lead position was not filled, and the position has not been re-advertised since its cancellation in September 2011. Stacey Vandor, the Planning Officer for DCCPS, informed Dr. Khoury that "the vacancy announcement was being cancelled because the full-time equivalent ("FTE") was needed for a senior-level position in a different program within DCCPS." (ECF No. 8-4 ¶ 3). Ms. Vandor affirms that "[t]he FTE was rescinded because in or about June 2011, the Associate Director for the Surveillance Research Program ("SRP") in DCCPS was detailed to a position in another part of the Division." (ECF No. 8-3 ¶ 4). Ms. Vandor explains that "[a]s a result of the detail, it was later determined that a GS-15 FTE was needed for SRP so that a senior-level employee

_____

[5] Plaintiff emailed human resources staff at HHS on August 10, 2011 to inform about system malfunction on USAJOBS that prevented her from submitting all of the required application materials by the initial deadline. (*See* ECF No. 28-6).

4

could be hired to perform the duties of the Associate Director for SRP." (*Id.*). Ms. Vandor decided "that rescinding the FTE for the EGRP position and moving it to SRP was the best allocation of resources for DCCPS." (*Id.* ¶ 5). Ms. Vandor affirms that she informed Dr. Khoury of this decision in late July 2011, before the applications were submitted and received for the position.[6] Because the announcement was cancelled, Dr. Khoury initially took on the role as Acting Knowledge Management Unit Lead. (ECF No. 8-4 ¶ 9; *see also* ECF No. 35-7). Dr. Khoury avers that he no longer serves as the Acting Knowledge Management Unit Lead, and that responsibility is now shared among five teams within EGRP. (ECF No. 35-1 ¶ 2).

In October 2011, NIH posted another job announcement, NIH-NCI-DE-12-544615 ("Vacancy 615"), for a "Health Scientist Administrator" position in EGRP, at a GS-13/14 pay grade. (ECF No. 8-7). The job announcement sought a "Knowledge Integration Team Lead." The major duties of that position as advertised were: (1) serving as a Program Officer with responsibility for providing scientific leadership and guidance to the planning, development, implementation and evaluation of the genomic and/or

---

[6] Dr. Khoury attests that he is "not familiar with and [has] never met Dr. Maria Agelli." (ECF No. 8-4 ¶ 10). He also does not recall having ever discussed Dr. Agelli with anyone at NCI. (*Id.*). Ms. Vandor similarly declares that she did not see the list of applicants for Vacancy 121 and was unaware that Dr. Agelli applied for the position. (ECF No. 8-3 ¶ 8).

epidemiologic related research program; (2) performing scientific and administrative reviews and analyses of applications/proposal from a programmatic viewpoint; (3) preparing information for and attending advisory/review committee/panel meetings and responding to issues and concerns about specific applications/proposals pertaining to genomic and/or epidemiologic related research; and (4) developing, coordinating and administering grants, cooperative agreements and contracts established to fulfill the mission. (*Id.* at 1). The announcement designated October 31, 2011 as the application deadline. NIH received over one hundred applications for this position. Dr. Agelli did not apply for Vacancy 615. (*See* ECF No. 8-8). In or about January or February 2012, Dr. Khoury selected Dr. Sheri Schully, Ph.D., for the position, at a GS-14 pay grade. (ECF No. 8-9). Dr. Khoury attests that at the time, Dr. Schully, whom Plaintiff believes to be in her thirties, was serving as a "Health Science Administrator" in EGRP at a GS-14 pay grade, and her selection to be the Knowledge Integration Team Lead was a lateral promotion. Dr. Khoury attests that aside from having a lower pay grade, the position was "more junior-level" than Vacancy 121, to which Dr. Agelli applied, but which was never filled. (ECF No. 8-4 ¶ 8).

## B.    Procedural History

Plaintiff filed the instant complaint against the Secretary on February 15, 2013, alleging non-selection based on age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA").  (ECF No. 1).[7]  Plaintiff believes that "NCI chose to keep [Vacancy 121] officially vacant rather than selecting her."  (*Id.* ¶ 14).  Although Dr. Agelli acknowledges that she did not apply for Vacancy 615, the position for which Dr. Schully was selected, Plaintiff believes that Dr. Schully was given the duties of the position advertised in Vacancy 121.  Plaintiff's principal contention is that "the factual appointment of an employee with half her age to the duties of the position, despite the lack of qualifications for the position itself, proves that [Plaintiff] was discriminated against because of her age."  (*Id.*).  On May 14, 2013, Defendant submitted a "Notice of Related Case," in which the Secretary informed the court of a previous employment discrimination action that Plaintiff instituted against the Secretary, which Judge Titus dismissed in September 2010, and which decision the Fourth Circuit affirmed in February 2012.  (*See* ECF No. 7).  Defendant noted that "[a]lthough the [instant] case involves an allegedly discriminatory non-selection that occurred after the

---

[7] It appears that Plaintiff has exhausted her administrative remedies and the Secretary does not argue otherwise.  (*See* ECF No. 1-2).

challenged employment actions involved in the previous case, the parties in both cases are identical and, given the nature, breadth, and extent of Plaintiff's allegation of discrimination in the previous case, there would be a substantial duplication of labor if another judge were to hear the new case." (*Id.* at 2). The case remained before the undersigned.

Defendant subsequently filed a motion to dismiss or, in the alternative, for summary judgment on May 16, 2013. (ECF No. 8). Plaintiff then moved six (6) times for an extension of time to file her opposition, which motions were granted. On September 25, 2013, the court issued an order granting Plaintiff's motion for an extension of time and directing that she submit the opposition by October 7, 2013. (ECF No. 24). Without moving for an extension of time, Plaintiff submitted an untimely opposition on October 31, 2013, which identified twenty-seven (27) documents she purported to include as exhibits. (ECF No. 25). On November 7, 2013, Plaintiff submitted twenty-five documents (exhibits 3-27), which did not include all of the exhibits Plaintiff presumably intended to submit with her opposition. (ECF No. 28). Consequently, Defendant moved to strike as untimely Plaintiff's opposition, or alternatively, requested that Plaintiff be provided a final deadline of November 29, 2013 to submit the outstanding documents. (ECF No.

26).[8]  On November 14, 2013, the undersigned issued an order granting in part Defendant's motion and directing Plaintiff to file all outstanding materials by November 22, 2013.  (ECF No. 29).  Plaintiff filed most of the supplemental documentation on November 22, 2013, (ECF No. 31), although she submitted a Rule 56(d) affidavit on December 2, 2013, (ECF No. 32-2), along with her motion to deny Defendant's motion to dismiss or for summary judgment.  The Secretary filed a reply to Plaintiff's opposition on January 3, 2014.  (ECF No. 35).  Plaintiff then moved for leave to file a surreply on January 22, 2014.  (ECF No. 36).

---

[8]  On November 12, 2013, Plaintiff filed an opposition to Defendant's "Notice of Related Case," stating her belief that Defendant misused Local Rule 103.1 to "adversely influence the opinion of the Court toward Plaintiff and Plaintiff's case." (ECF No. 27, at 1).  The record does not support Plaintiff's position.  Local Rule 103.1(b)(ii) states that "[i]f counsel for a defendant believes that a case is related to a prior case and that fact has not been noted on the civil cover sheet by plaintiff, counsel for the defendant *shall* bring that information to the attention of all parties and the Clerk, and the Clerk shall . . . inform the judge to whom the new case has been assigned." (emphasis added).  Here, the civil cover sheet did not identify any related case(s).  (*See* ECF No. 1-4). Defendant's filing of the "Notice of Related Case" was appropriate – and mandatory - under Local Rule 103.1 and Plaintiff's objections are without merit.  Plaintiff states in the opposition that since the instant case is unrelated to her prior litigation before Judge Titus, this case should proceed before the undersigned and not be transferred to Judge Titus. Because Plaintiff's case has not been transferred to Judge Titus, the arguments Plaintiff advances in this opposition are moot.

## II.  Standard of Review

The Secretary has moved to dismiss or, alternatively, for summary judgment.  Because both parties rely extensively on matters outside the pleadings, the motion will be treated as one for summary judgment.  *See Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008).

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis

### A. Plaintiff's Non-selection Claim

In her complaint, Plaintiff alleges that her non-selection for Vacancy 121 constituted age discrimination under the ADEA. The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of [her] age." 29 U.S.C. § 623(a). There are two methods for proving intentional discrimination in employment: (1) through direct evidence; or (2) through circumstantial evidence under the three-step burden shifting scheme set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), and affirmed in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Although *McDonnell Douglas* dealt only with Title VII claims, the same framework is applied to age discrimination claims arising under the ADEA. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *cert dismissed*, 543 U.S. 1132 (2005).

Here, Plaintiff lacks any direct evidence of age discrimination premised on a non-selection, and thus must proceed under the burden-shifting framework established in *McDonnell Douglas*. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).[9] Under that framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. After doing so, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the alleged adverse employment action. *See Reeves*, 530 U.S. at 142 (2000) (*citing Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, the presumption of discrimination raised by the plaintiff's *prima facie* case is rebutted. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (*citing Burdine*, 450 U.S. at 255 n.10). Then, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons

---

[9] The Defendant also argues that Plaintiff cannot prevail on her ADEA claim because she cannot show that, but for her age, she would have been selected for Vacancy 121. Ultimately, Plaintiff would have to make this showing to prevail at trial. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). At the summary judgment stage, however, post-*Gross* decisions have continued to apply the *McDonnell Douglas* framework. *See, e.g., Thornton v. Balt. City Bd. of Sch. Com'rs*, Civ. No. WMN-07-1555, 2009 WL 3767090, at *5 (D.Md. Nov. 9, 2009). As will be seen, Plaintiff cannot meet her burden under *McDonnell Douglas*, thus there is no need to consider the higher standard of "but for" causation.

offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against [her]." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (*citing Burdine*, 450 U.S. at 253).

**1. *Prima Facie* Case**

To establish a *prima facie* case of discrimination in a non-selection case, Plaintiff must prove that: (1) she was a member of a protected class or classes; (2) she applied and was qualified for the position for which she applied; (3) she was not selected despite her qualifications; and (4) she was rejected for the position in favor of someone not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination. *Alvarado v. Bd. of Trustees of Montg. Community College*, 928 F.2d 118, 121 (4th Cir. 1991).

Plaintiff has not met this burden because she cannot establish that she was rejected for Vacancy 121 under circumstances giving rise to an inference of unlawful discrimination. As Judge Quarles reasoned in *Moore v. Leavitt*, Civil No. WDQ-04-2819, 2007 WL 5123539, at *4 (D.Md. Feb. 9, 2007), "to create an inference of discrimination, a plaintiff must at least demonstrate that her 'rejection did *not* result from the two most common legitimate reasons on which an employer

might rely to reject a job applicant: an absolutely or relative lack of qualifications or *the absence of a vacancy in the job sought*.'" (*quoting Int'l Broth. Of Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977)) (emphasis added). Here, Plaintiff was not promoted to the Medical Officer (Research) position advertised in Vacancy 121 precisely because of the absence of a full time position in EGRP at the GS-15 pay grade. Stacey Vandor, the Planning Officer for DCCPS who supports the Director of DCCPS with Division-wide planning and resource allocation, attests that the full time position originally posted as Vacancy 121 was rescinded "because in or about June 2011, the Associate Director for the Surveillance Research Program ("SRP") in DCCPS was detailed to a position in another part of the Division. As a result of the detail, it was later determined that a GS-15 FTE was needed for SRP so that a senior level employee could be hired to perform the duties of the Associate Director for SRP." (ECF No. 8-3 ¶ 4).

Indeed, it is undisputed that Defendant canceled Vacancy 121 and did not fill the position. As held in *Bowie v. Ashcroft*, 283 F.Supp.2d 25, 31 (D.D.C. 2003), "[w]hen a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her prima facie case because she cannot satisfy the fourth prong of the analysis." *Fornah v.*

*Univ. of Maryland*, Civil Action No. CBD 08-1951, 2009 WL 3247423, at *5 (D.Md. Sept. 30, 2009) ("[p]laintiff cannot make a *prima facie* case for discrimination because Defendant cancelled the search for Vacancy No. 1189. . . . As the vacancy did not remain open, [d]efendant is entitled to summary judgment on this claim."). In fact, none of the individuals who applied for Vacancy 121 were interviewed or selected, and each applicant received identical notification that "[t]he vacancy announcement [] was cancelled or postponed." Nor is there any indication from the record that the vacancy was re-advertised, and that Plaintiff applied, but was rejected. (ECF No. 8-6); *see, e.g., Kinnally v. Marriott Int'l Inc.,* 2006 U.S. Dist. LEXIS 699, at *11 (D.S.C. Jan. 3, 2006) (adopting the Magistrate's recommendation to grant defendant's motion for summary judgment because Plaintiff failed to present evidence sufficient to establish the fourth prong of the *McDonnell-Douglas prima facie* age discrimination case; "[t]he Magistrate found that, given that MI withdrew the DOEM position in July of 2002, [p]laintiff *cannot* establish that, following her rejection, the [DOEM] position remained open and the employer continued to seek candidates with comparable qualifications for the position." (internal citations omitted)), *aff'd*, 205 F.App'x 145, 146 (4th Cir. 2006); *Bowie*, 283 F.Supp.2d at 31 (stating that no adverse

employment action exists if there was no vacancy at the time the plaintiff applied or the position was never filled).

Plaintiff argues that "Dr. Sheri Schully, an employee half the age of and less qualified than Plaintiff, was *de facto* given the job Plaintiff had applied for, but had been rejected, just a short time before." (ECF No. 25, at 16). Plaintiff contends that "the HHS was looking to hire an employee for a position Dr. Agelli was highly qualified for, that Dr. Agelli applied for the position, that she was not selected and that, shortly thereafter, with the <u>vacancy still open</u>, the HHS <u>gave</u> the duties of the position to an employee half the age of Dr. Agelli and less qualified." (*Id.* at 17) (emphasis in original). The record does not support Plaintiff's version of the facts. As stated, *no one* was selected for Vacancy 121. The Secretary submitted with its motion to dismiss or for summary judgment a declaration from Dr. Khoury that he served as Acting Knowledge Management Unit Lead after the FTE slot, which was initially intended to be filled through Vacancy 121, was moved to SRP. The Secretary submitted another declaration from Dr. Khoury with the reply brief indicating that he no longer serves in the acting position "because it was ultimately determined that there would not be a full-time equivalent ("FTE") available to fill that position on a permanent basis and, therefore, there is no Knowledge Management Unit." (ECF No. 35-1 ¶ 2). Dr. Khoury

further avers that EGRP created five teams instead: "the Knowledge Integration Team, the Cohort & Consortia Coordination Team, the Portfolio Management & Evaluation Team, the Planning & Budget Team, and the Communications Team." (*Id.*).[10]

Indeed, Dr. Schully was selected, from over one hundred applicants, for a *different* position and one to which Plaintiff did not apply. *See, e.g., Bowie*, 283 F.Supp.2d at 33 ("[p]laintiff has not made out failure to promote claims regarding the March 28, 2000 assignment to Acting Assistant Director of the Grants Monitoring Division and the July 1, 2002 assignment to Acting Assistant Director of the Compliance Division *because plaintiff has not alleged that she applied for either position before the 'acting' designations were made*." (emphasis added)). Specifically, Dr. Schully was selected for the "Health Scientist Administrator" position advertised in Vacancy 615 at a *lower* pay grade than the position advertised in Vacancy 121, and the same pay grade at which Plaintiff is currently employed. Ms. Vandor attests, "[t]hat vacancy announcement was for four (4) GS-601-13/14 Health Scientist

---

[10] Dr. Khoury also attests that the duties of the Knowledge Management Unit Lead position are being completed "by Dr. Daniela Seminara, GS-15, Senior Scientist and Consortia Coordinator; Dr. Scheri Schully, GS-14, Knowledge Integration Team Lead; Scott Rogers, GS-13, Portfolio Management Team Lead; Chinonye Harvey, GS-13, Planning and Budget Team Lead; and Christine Kaefer, GS-13, Communications Team Lead." (ECF No. 35-1 ¶ 3).

Administrator (non-supervisory) positions. Dr. Schully was already a GS-601-14 Health Science Administrator in EGRP, and her FTE moved with her to the Knowledge Integration Team Lead position." (ECF No. 8-3 ¶ 7).[11] Nevertheless, even crediting Plaintiff's argument that the "Knowledge Management Unit Lead" position advertised in Vacancy 121 was subsumed in the "Knowledge Integration Team Lead" position in Vacancy 615, Plaintiff had every opportunity to – but did not – apply for Vacancy 615. A similar argument to one Plaintiff advances here was rejected in *Moore*. Specifically, in that case, plaintiff argued that "it would be a mistake to accept the [DHHS's] assertion that VAN RN '032 was never filled [] because the DHHS filled other GS-13 positions in the following years that required the same prerequisites." *Moore*, Civil No. WDQ-04-2819, 2007 WL 5123539, at *5. Judge Quarles concluded that "Moore [did] not show that she or other members of her protected class were unable to compete for those subsequent VANs." Similarly, Dr. Agelli cannot show that she competed for Vacancy 615 and that Dr. Schully was selected over her. *See, e.g., Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) ("If an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to

---

[11] Applications for Vacancy 615 were solicited from United States citizens from October 17, 2011 to October 31, 2011. (ECF No. 8-7).

apply for a particular position cannot establish a prima facie case of discriminatory failure to promote."); *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003) (stating that "[a] general interest in being rehired without submitting an application is not enough to establish a prima facie case of age discrimination when the defendant-employer has publicized an open position"). She also cannot show that Dr. Schully was selected for Vacancy 121, to which Plaintiff applied, but which was subsequently cancelled.

Plaintiff asserts that she believes the announcement was cancelled because HHS/NCI specifically intended not to select her for the position and it also denied her a long overdue promotion to a GS-15 pay grade. But this is "merely a self-serving opinion that cannot, absent objective corroboration, defeat summary judgment." *Williams*, 370 F.3d at 433; *National Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000); *Brown v. McLean*, 159 F.3d 898, 904-04 (4th Cir. 1998) (holding that plaintiff did not meet burden of establishing that defendant's "alleged discriminatory practices prevented him from applying for the [new] position"). The analysis in *Hackney v. Perry*, No. 97-2055, 1998 WL 801490 (4th Cir. 1998), is instructive. In that case, the Defense Logistics Agency cancelled a position announcement to which plaintiff applied; the Agency instead decided to fill the position by the lateral transfer of another

Agency employee. *Id.* at *1. The plaintiff in *Hackney* subsequently brought an age discrimination claim on the basis that the position to which he applied was filled by someone younger than forty (40) years old. The district court adopted the magistrate judge's report and recommendation granting summary judgment to the defendant because plaintiff failed to establish a *prima facie* age discrimination case. The Fourth Circuit upheld this ruling on appeal. The Fourth Circuit reasoned that plaintiff failed to show that his application was "rejected" because "[t]he undisputed evidence show[ed] that the announcement was canceled and that competitive selection was not undertaken in filling the position." *Id.* at *2. The Fourth Circuit relied on an affidavit from a personnel management specialist with the Agency stating that "the announcement was canceled and the vacant position was filled, in conformity with established Agency policy, by the lateral transfer of Connett." *Id.* Consequently, the court held that "Hackney's application was not considered, and thus, he was not rejected within the meaning of *McDonnell Douglas*."

The same logic applies to these facts. Plaintiff's application – along with the twenty-two other applications for Vacancy 121 – was not considered because the vacancy was canceled. Thus, much like the plaintiff in *Hackney*, Dr. Agelli was not rejected within the meaning of *McDonnell Douglas*.

Plaintiff questions Dr. Schully's qualifications for the Knowledge Integration Team Lead position in Vacancy 615 – although Plaintiff does not dispute that she did not apply for this position – but Dr. Schully's qualifications for the position are irrelevant to Plaintiff's burden of establishing a *prima facie* case of age discrimination. *See id.* at *2 ("[a]lthough on appeal Hackney disputes the qualifications of Connett . . . [w]hether Connett was qualified for the position is irrelevant."). Because Plaintiff has not pled a *prima facie* case, summary judgment is appropriate on Plaintiff's ADEA claim.

### 2. Legitimate Non-Discriminatory Reasons

Even if Plaintiff's *prima facie* case of discrimination related to her non-selection for Vacancy 121 were to be presumed, summary judgment would still be granted because Defendant has established legitimate, non-discrimination reasons for Plaintiff's non-selection for the Knowledge Management Team Lead position advertised in Vacancy 121 at a GS-15 pay grade. As Defendant asserts, NIH determined that rescinding the FTE for the EGRP GS-15 position and moving it to SRP was the best course of action as a matter of resource allocation. (ECF No 8-1, at 16). Specifically, Ms. Vandor attests that "[t]he Knowledge Management Unit Lead Position in EGRP was never filled because there is no FTE available for that position, and therefore, no vacancy to fill." (ECF No. 35-3 ¶ 3). She further avers that

"[t]he GS-15 Associate Director position associated with the FTE that was reallocated from EGRP to SRP was filled on November 3, 2013, by Dr. Lynne Schumacher-Penberthy." (*Id.* ¶ 5).[12] As the Fourth Circuit reasoned in *Hux v. City of Newport News, Va.*, "[d]uty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked with the authority to strip employers of their basic business responsibilities." 451 F.3d 311, 315 (4th Cir. 2006). Importantly, when the employer articulates a legitimate, non-discriminatory basis for its action, this court does not "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [adverse employment action]." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000). Plaintiff argues that "[a] reasonable person would think, as Plaintiff does, that Dr. Schully is there to stay, that she will soon transition into a GS-15 position most likely by officially filling the FTE-slot she had been filling unofficially for the last two years, that is, the very same, FTE-slot of announcement NIH-NCI-DH-11-507121." (ECF No. 25, at 31-32). Plaintiff's conjectures are insufficient to defeat the Secretary's legitimate, non-discriminatory reasons that satisfy Defendant's burden of production here. Further undercutting Plaintiff's

---

[12] Notably, Defendant points out that Dr. Schumacher-Penberthy is fifty-nine (59) years old and only two years younger than Plaintiff. (ECF No. 35, at 11).

22

argument is Ms. Vandor's declaration that "[n]o additional GS-15 FTEs have been allocated to EGRP since the FTE [in Vacancy 121] was reallocated to SRP." (ECF No. 35-3 ¶ 6).

### 3. Pretext

Plaintiff attempts to show that Defendant's reasons are pretextual. To establish pretext, a plaintiff must present evidence to allow a reasonable juror to find that (1) the legitimate, nondiscriminatory reasons were "unworthy of credence" and (2) unlawful discrimination was the actual motive for the decision. *See Reeves*, 530 U.S. at 143, 147. Plaintiff may prove that the defendant's proffered reasons were unworthy of credence "by showing that [they] had no basis in fact, [they] did not in fact motivate the discharge or, if they were factors in the decision, they were jointly insufficient to motivate the discharge." *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir. 1995). Dr. Agelli's self-serving statement that "[w]ith discovery, Plaintiff will prove [] that the cancellation of vacancy announcement NIH-NCI-DH-11-507121 was a pretext of intentional age discrimination and also that every reason the Defendant has proffered so far is pretext" is insufficient to establish pretext. (ECF No. 25, at 40); *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.").

Plaintiff also suggests that Dr. Schully was preselected for the position advertised in Vacancy 121, even if at a lower grade level, and is functionally performing the same duties in the Knowledge Integration Team Lead role as the Knowledge Management Team Lead position that was never filled. This argument is similarly unavailing. "The argument that a supervisor may have preselected an employee for a promotion 'is not sufficient evidence for jurors reasonably to conclude' that the defendants' explanation for hiring [a selectee] was pre[]text." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (citation and internal quotation marks omitted). In any event, Dr. Schully did not receive a promotion over Dr. Agelli, as Dr. Schully "was already a GS-601-14 Health Science Administrator in EGRP, and her FTE moved with her to the Knowledge Integration Team Lead position." (ECF No. 8-3 ¶ 7). Furthermore, as explained above, the position to which Dr. Agelli applied and which was never filled was for a GS-15 pay grade. Additionally, Dr. Khoury declares that he has never met Dr. Agelli and "to the best of [his] knowledge, prior to learning about the [] complaint, [he] do[es] not recall having ever discussed Dr. Agelli with anyone at NCI." (ECF No. 8-4 ¶ 10). Ms. Vandor also declares that she has "never seen the list of applicants who applied under Vacancy Announcement NIH-NCI-DH-11-507121. Prior to learning about the [] complaint, [she] was

not aware that Dr. Maria Agelli had applied for the position advertised under Vacancy Announcement NIH-NCI-DH-11-507121." (ECF No. 8-3 ¶ 8); *Stoyanov v. Mabus*, Civil Action No. DKC 07-1953, 2013 WL 1104978, at *8 (D.Md. Mar. 15, 2013) ("many of the officials who selected the candidates who ultimately filled these positions declared that they never met [p]laintiff and, at the time of selection, were unaware of, or never discussed, [p]laintiff's age, national original, or prior EEO activity."). Accordingly, the record contradicts Plaintiff's broad assertions, which fail to show that Defendant's preferred legitimate nondiscriminatory reasons for its hiring decisions are pretextual.

### B. Plaintiff's Rule 56(d) Request

Plaintiff argues that Defendant's motion is premature as there has been no discovery in the case and she "should not have to respond to Defendant's motion for summary judgment without the opportunity of examining documents and records that are in the exclusive possession of the HHS/NCI and of obtaining depositions." (ECF No. 25, at 27). Dr. Agelli submits a Rule 56(d) affidavit declaring that "each of the Rule 56(d) discovery requests for production of documents and depositions is targeted, relevant and essential for establishing and[/]or clarifying the facts; thus, likely to assist [] the Plaintiff, in unmasking Defendant's pretext and establishing genuine issues

of material fact." (ECF No. 32-2 ¶ 16). Defendant, in turn, argues that "[t]he discovery requested by Plaintiff in this case reveals . . . her intent to embark on an unbridled fishing expedition in search of unknown evidence of pretext." (ECF No. 35, at 21) (emphasis in original). Defendant further challenges Plaintiff's failure to explain why she has been unable to obtain opposition evidence, including affidavits from witnesses. Defendant also states that "[m]ore fundamentally, in light of the evidence in the record thus far, Plaintiff's affidavit does not and could not specify how the requested discovery would create a genuine issue of material fact sufficient to defeat summary judgment in this case." (*Id.* at 22). Defendant's arguments are persuasive.

Plaintiff is correct in noting that generally, "summary judgment is appropriate only after adequate time for discovery." *Evans*, 80 F.3d at 961. But to render this general rule applicable, the nonmovant must clearly demonstrate the need for discovery pursuant to Rule 56(d), which allows the court to deny summary judgment or delay ruling on the motion until discovery has occurred if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential

to justify its opposition." Fed.R.Civ.P. 56(d).[13]  Courts interpreting this rule have consistently held that a Rule 56(d) request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted).  In other words, a nonmovant must provide "a reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact" in order for such a request to be granted. *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010); *Richard v. Leavitt*, 235 F.App'x 167, 167 (4th Cir. 2007) (affirming the district court's denial of a Rule 56(d) request when the plaintiff failed to provide a basis for believing that the information sought actually existed).  Put simply, Rule 56(d) does not authorize "fishing expedition[s]." *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd*, 50 F.App'x 179 (4th Cir. 2002); *Wright v. Eastman Kodak Co.*, 550 F.Supp.2d 371, 382 (W.D.N.Y. 2008) ("[w]hile a Rule 56[(d)] discovery request may be granted to allow a plaintiff to 'fill material evidentiary gaps,' it may not be premised solely on speculation as to evidence which might be discovered[.]"), *aff'd* 328 F.App'x 738 (2[d] Cir. 2009).

---

[13]  The 2009 Amendments to the Federal Rules of Civil Procedure transferred the language of former Rule 56(f) to Rule 56(d).

Plaintiff's Rule 56(d) affidavit seeks several forms of discovery. (See ECF No. 32-2). First, Plaintiff contends that she is entitled to discovery on the following items: (1) the position of Medical Officer identified in Vacancy 121; (2) the associated full-time employment slot; (3) Vacancy Announcement 121; (4) selection and pre-selection; (5) applicants for the position; (6) Knowledge Management Unit; (7) Dr. Robert Croyle, Dr. Deborah Winn, Dr. Muin Khoury, Ms. Stacey Vandor; (8) Position of Team Lead, Knowledge Integration, GS-601-14; (9) announcement, publication, pre-selection and selection; (10) applicants for this position; (11) Dr. Schully and the position of Lead, Knowledge Integration; (12) Knowledge-related teams other than Knowledge Integration Team; (13) Knowledge Integration Team staff, organization, duties; (14) EEO records of DCCPS management; (15) DCCPA full-time professional staff; (16) NCI job assignments to GS-601-14/15 and GS-602-14/15 employees; (17) NCI non-supervisory GS-602-15 (Medical Officers); (18) NCI Office of Management; (19) Surveillance Research Program (SRP); and (20) EGRP organization and staff. (ECF No. 32-2, at 2-3). As an initial matter, Plaintiff already has access to many of the documents she seeks (*e.g.,* applicants for Vacancies 121 and 615 (*see* ECF Nos. 8-5 & 8-8), organizational chart, the Knowledge Integration Team Lead position, etc.); *see, e.g., Boyd v. Guiterrez*, 214 F.App'x 322,

323 (4th Cir. 2007) (affirming district court's denial of a Rule 56(d) request where "numerous documents and affidavits submitted during [the plaintiff's] EEOC proceedings were already available to [him]"). Furthermore, Plaintiff's discovery requests are overly broad and encompass documents outside the scope of her complaint (*e.g.,* EEO records of DCCPS management). In addition to the above discovery, Plaintiff seeks forty-four (44) categories of documents and identifies thirteen (13) witnesses she plans to depose, including Ms. Vandor, Dr. Khoury, Dr. Schully, and other employees in EGRP. (*See* ECF No. 32-2, at 3-10). Despite the apparent specificity of Plaintiff's affidavit, the crux of Dr. Agelli's argument is that she is entitled to discovery regarding aspects of the selection decisions for Vacancies 121 and 615, information regarding Dr. Schully's qualifications and career development, and documents concerning the general hiring practices and decisions in NCI. Plaintiff's Rule 56(d) affidavit reveals that she hopes to locate some evidence probative of pretext and believes that she "should be allowed to find out if [she] has a claim, rather than that [she] has a claim for which [she] needs . . . discovery." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2[d] Cir. 1994).

Accordingly, a thorough review of Plaintiff's opposition papers, supporting exhibits, and her Rule 56(d) affidavit reveals no plausible basis for believing that any evidence of

unlawful discrimination would turn up during discovery. Defendant has already provided a wealth of information regarding the non-selection decision in question and Vacancy 615, including vacancy announcements; the list of applicants; sworn declarations from selecting officials; organizational charts and staff lists; and resource allocation spreadsheets for EGRP and SRP. (*See* ECF Nos. 8 & 35). As discussed, nothing in these materials even hints of unlawful discrimination, nor suggests that the discovery Plaintiff seeks would create a genuine issue of material fact. Plaintiff's own assertion that "the evidence available now is already sufficient to support Plaintiff's assertions" bolsters this point. (ECF No. 25, at 22). Likewise, Plaintiff's purported need for depositions amounts to a "purely speculative hope" that Dr. Khoury and Ms. Vandor will recant their sworn declarations and other employees will reveal "a long-running" plan not to promote Plaintiff because of her age. *See, e.g., Hamilton v. Geithner*, No. 1:08cv1112 (JCC), 2009 WL 2240358, at *2 (E.D.Va. July 23, 2009) (declining to reconsider denial of Rule 56(d) request where "a lengthy EEO investigation created an extensive record in which the recollections of witnesses were set down close in time to when the alleged discriminatory events occurred"). Because permitting Plaintiff to engage in discovery in such

circumstances would be akin to granting her a license to conduct a fishing expedition, her Rule 56(d) request will be denied.

### C. Plaintiff's Motion for Leave to File Surreply

Plaintiff seeks leave to file a twenty-three page surreply. (ECF No. 36). "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a). Although a district court has discretion to allow a surreply, surreplies are generally disfavored. *Chubb & Son v. C.C. Complete Servs., LLC,* 919 F.Supp.2d 666, 679 (D.Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted). By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. RWT-12-3109, 2013 WL 3353752, at *3 (D.Md. July 2, 2013).

Here, to support her request, Plaintiff objects to Defendant's arguments in the reply brief, the submission of revised declarations from Dr. Khoury and Ms. Vandor, and what she characterized as "new evidence." Plaintiff also asserts that Defendant misinterpreted her complaint and the arguments advanced in the opposition. Plaintiff's motion will be denied. Dr. Agelli's arguments in this motion largely do not address

matters raised for the first time in Defendant's reply, but seek to reopen briefing regarding EGRP's alleged discrimination against her on the basis of age and selection of Dr. Schully for a position which is "de facto" the position for which Dr. Agelli applied. Plaintiff again attempts to show that Defendant's explanations are pretextual. Moreover, Defendant does not raise new arguments or legal theories in its reply brief, but merely responds to Plaintiff's arguments. *See, e.g., Fink v. Richmond*, Civil Action No. DKC 2007-0714, 2008 WL 9364730, at *15 (D.Md. Mar. 24, 2008) (denying motion for leave to file a surreply, where plaintiff claimed that defendants presented new arguments); Ye*ibyo v. E-Park of DC, Inc.*, Civil Action No. DKC 2007-1919, 2008 WL 182502 (D.Md. Jan. 18, 2008) (same). Accordingly, a surreply is unnecessary.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss or for summary judgment filed by Defendant will be granted. Plaintiff's motion to deny Defendant's motion, (ECF No. 32), will be denied as moot. Plaintiff's motion for leave to file a surreply, (ECF No. 36), will be denied. A separate order will follow.

                    /s/
_____
DEBORAH K. CHASANOW
United States District Judge
